# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

COREY CRAVENS,

:

    Petitioner,                                    Case No. 1:11-cv-265

:            District Judge S. Arthur Spiegel
  -vs-                                       Magistrate Judge Michael R. Merz

ROB JEFFREYS, Warden, Ross
 Correctional Institution,

:

    Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Corey Cravens pursuant to 28 U.S.C. § 2254. Mr. Cravens is serving a fourteen-year term of imprisonment in Respondent's custody upon his conviction in the Hamilton County Common Pleas Court for robbery and felonious assault. He pleads the following Grounds for Relief:

> **Ground One:** Petitioner was denied Due Process when the evidence was insufficient.
>
> **Supporting Facts:** The state failed to meet its burden of proving that the petitioner was guilty of felonious assualt [sic] and robbery.
>
> **Ground Two:** Petitioner was denied Due Process when the trial court overruled his motion for acquittal.
>
> **Supporting Facts:** The state of Ohio failed to prove the elements of petitioner's robbery and felonious assault convictions.
>
> **Ground Three:** Petitioner was denied the assistance of counsel at trial and on appeal.

>**Supporting Facts:** Appellate counsel failed to raise on appeal trial counsel's ineffectiveness on appeal when trial counsel failed to object to the complicity instruction at trial.

(Petition, Doc. No. 1, PageID 5-9.)

## Procedural History

Petitioner was indicted on two counts of felonious assault, one count of aggravated robbery, one count of robbery, and one count of abduction. A jury found him guilty of one count of felonious assault with specifications and one count of robbery as charged in Counts Two and Four of the Indictment. Represented by new counsel, he took a direct appeal to the First District Court of Appeals which affirmed the conviction and sentence. His subsequent appeal to the Ohio Supreme Court was declined. On April 25, 2011, Mr. Cravens filed an application to reopen his direct appeal, asserting as an omitted assignment of error the claim he now makes in Ground Three. However, the Court of Appeals dismissed the application as untimely and Mr. Cravens did not appeal further to the Ohio Supreme Court. In the meantime, however, he filed his Petition in this Court.

## Analysis

The Hamilton County Court of Appeals recited as follows what it regarded as the relevant facts:

> One morning, Bobbie Edwards gave Phillip Barnett a ride in Cravens's van, in which Cravens was a passenger. Edwards testified that, after Barnett had gotten into the van, she had seen Cravens make several calls on a cellular phone. Cravens then directed Edwards to

>pick up Chaz Henry.
>
>A short time after Edwards had picked up Henry, he demanded money from Barnett and shot him in the leg. Barnett gave Henry his money, and Henry then forced him from the van.
>
>Henry testified that he had received a call from Cravens outlining the plan for the robbery. According to Henry, Edwards had given him a "look" as a signal for when he was to commit the robbery. Henry further testified that Cravens had shared in the proceeds of the robbery.
>
>The defense rested without presenting evidence. The jury found Cravens guilty of the offenses, and the trial court sentenced him to consecutive seven-year terms of imprisonment.

*State v. Cravens*, Case No. C-090078 (Ohio App. 1st Dist. Dec. 9, 2009)(unreported, copy at Return of Writ, Doc. No. 9, Exhibit 8, PageID 101.)

## Procedural Default

The Warden asserts Ground Three for Relief is forfeited by Mr. Cravens' failures to properly present it to the state courts. Specifically, Respondent contends Cravens never presented a claim of ineffective assistance of trial counsel to the state courts and failed to present his claim of ineffective assistance of appellate counsel in a timely manner.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

>In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage

of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Eley v. Bagley*, 604 F.3d 958 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (6th

Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138.

In his Traverse, Mr. Cravens does not respond at all to the Warden's procedural default defense (Doc. No. 12). Analyzing the Warden's argument, the Court finds it to be well taken.

Mr. Cravens' claim of ineffective assistance of trial counsel was never presented to the state courts at all for decision on the merits, but only as an omitted assignment of error on the application for reopening. That claim is therefore procedurally defaulted.

Mr. Cravens committed two procedural defaults on his claim of ineffective assistance of appellate counsel. First of all, his application to reopen was untimely and the Court of Appeals held that untimeliness against him, dismissing the application without reaching the merits. In noncapital

cases, the timeliness rule for filing a 26(B) application is an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859, 861 (6th Cir. 2008)(noting that *Franklin* v. Anderson, 434 F.3d 412 (6th Cir. 2006) was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900, 928, n. 11 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. Aug. 24, 2009).

Secondly, Mr. Cravens further defaulted by not appealing to the Ohio Supreme Court after his 26(B) Application was dismissed in the Court of Appeals.

Ground Three for Relief is therefore procedurally defaulted and should be dismissed with prejudice on that basis.

## Sufficiency of the Evidence

In his first two Grounds for Relief, argued together in the Traverse, Mr. Cravens challenges the sufficiency of the evidence on which he was convicted. These Grounds essentially present the same legal question, because the test for granting a motion for judgment of acquittal is whether the prosecution has submitted sufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved

beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, No. 3:03-po-003, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio, Oct. 12,2007). This rule was adopted as a matter of Ohio law in *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

This claim of insufficient evidence was presented to the First District Court of Appeals which overruled the claim. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 792 (2011); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000).

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See

> *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

Therefore this Court must begin with the First District Court of Appeals' ruling on this claim. It held:

> In his first, second, and third assignments of error, Cravens now argues that the convictions were based on insufficient evidence and were against the manifest weight of the evidence." We address the assignments together.
>
> In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Waddy*, 63 Ohio St. 3d 424, *; 588 N.E.2d 819 (1992)  To reverse a conviction on the manifest weight of the evidence,[1] a reviewing

---

[1] Mr. Cravens' state court claim that his conviction was against the manifest weight of the evidence is not repeated here and could not be considered here on the merits because it raises a question of state law, not federal constitutional law.

-8-

> court must review the entire record, weigh the evidence and an reasonable inferences, (consider the credibility of the -witnesses) and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins,* 78 Ohio St. 3d 380 (1997).
>
> The felonious-assault statute, R.C. 2903.1l(A)(1), provides that [n]o person shall knowingly ... [c]ause serious physical harm to another'" ...," R.C. 2911.02(A)(2), governing robbery, states that "[n]o person, in attempting or committing a theft offense ... shall ... [i]nflict, attempt to inflict, or threaten to inflict physical harm on another."
>
> In this case, the convictions were in accordance with the evidence. The state presented evidence that Cravens had planned the offenses and had shared in the proceeds of the robbery. Although Cravens cites a number of inconsistencies in the state's case, we cannot say that the jury lost its way in finding him guilty. We overrule the first, second, and third assignments of error.

*State v. Cravens, supra*, copy at PageID 102-103.

Mr. Cravens asserts this conclusion of the Court of Appeals is an objectively unreasonable application of *Jackson v. Virginia* and its progeny in the United States Supreme Court. He makes numerous references to the trial testimony in his Traverse. The Court ordered filing of the trial transcript and that has been done, so the Court is able to examine all of the cited testimony (See Doc. Nos. 15, 16).

Petitioner asserts that he was convicted on a complicity theory, to wit, that he knowingly aided and abetted others in committing the offenses of felonious assault and robbery (Traverse, Doc. No. 12, PageID 152). He further asserts that, under Ohio law,

> To support a conviction for complicity by aiding and abetting, the evidence must show that the accused supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the accused shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime. *State v. Johnson.* 93 Ohio St,3d 240, 245, 2001 Ohio 1336, 754 N .E.2d 796; *State v. Crutchtfeld,* Warren App.

No. CA2005-11-121, 2006 Ohio 6549, P23.

*Id.* *Johnson* and *Crutchfield* are not cited in either his Brief on Appeal or by the Court of Appeals in its decision. However, in *Johnson* the Ohio Supreme Court held

> Accordingly, we hold that to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

93 Ohio St. 3d 240, 244 (2001). The Magistrate Judge finds that is an authoritative statement of the elements of aiding and abetting in Ohio and the State's proof in this case must be measured against those elements.

### Undisputed Facts

Cravens apparently makes no dispute of the following facts found by the Court of Appeals: Barnett, the victim, was shot in the leg by co-defendant Chaz Henry, an act which constitutes felonious assault under Ohio law. Henry also took Barnett's money by force, an act which constitutes robbery under Ohio law. These acts took place in Cravens' presence in a vehicle he owned being driven by co-defendant Edwards with Cravens' permission.

### Summary of Relevant Trial Testimony

The testimony at trial which Cravens does dispute and which he says is insufficient is summarized as follows: The victim Phillip Barnett testified he had met Cravens one time before the offense but that he had known Bobbie Edwards his whole life (Trial Tr. PageID 207). Barnett met Edwards and Cravens at a Marathon gas station close to his home where he had gone to buy beer, cigarettes, and a phone card. *Id.* Edwards asked him for a beer and "a couple of dollars for gas," offering him and Shawn Bishop who was with him a ride home. *Id.* Instead of taking him home right away, they picked up and then dropped off a girl who was working at Taco Bell, driving perhaps 15 miles out of the way. *Id.* at PageID 208. On the way back to Barnett's house, Edwards pulled into the back of an apartment complex and picked up Chaz Henry. Barnett's friend Bishop had to vomit and got out of the van. *Id.* at PageID 209. Instead of then taking Barnett home by the quickest route, which he described to her, Edwards kept driving, saying "We've got to make one more stop." *Id.* After they turned onto a street called Shadybrook, Henry said "Pull over a minute." When Edwards did, Henry shot Barnett in the leg, put the gun to his head, and said "Give me your MF'n money now." *Id.* at PageID 210. After Barnett gave Henry the $600 in cash he had, Henry told him to get out of the van "before I blow your brains out." *Id.* On cross-examination, Barnett denied he had talked earlier with Bobbie Edwards about meeting up and scoring some drugs. *Id.* at PageID 213. While he was in the van before he got shot, Barnett saw both Edwards and Cravens use their cell phones. *Id.* at PageID 218.

Chaz Henry testified that by the time of Cravens' trial, he had already pled guilty to felonious assault and abduction of Barnett arising out of this incident. (Trial Tr. at PageID 223.) He had known Cravens because he was dating Cravens' sister, Jasmine Tolbert. *Id.* at PageID 224. Cravens called him on the morning of the offense at Tolbert's house and told him that a robbery was "going

-11-

to happen." *Id.* Henry responded "come pick me up," but Cravens did not give him any details about who he was going to rob or what was going to happen." *Id.* Henry had a gun on his person when Cravens called him. *Id.* at PageID 225. When they got to a street called Hartwell, Edwards "gave me the look. So I pulled out my gun and pointed it at [Barnett]. He smacked my gun down. That's when I shot him, took his money." *Id.* at PageID 226. Although Henry asked for the money before shooting, Barnett did not give up the money until Henry shot him. *Id.* Henry then threw Barnett out of the van. *Id.* Edwards, Henry, and Cravens split the proceeds of the robbery. *Id.* When first questioned about the crime, Henry denied involvement. *Id.* at PageID 227. He continued to have a good relationship with Cravens' sister after the robbery "until I found out that they had told on me." *Id.* at PageID 228.

Bobbie Edwards testified next. She was charged with the same offenses as Cravens. (Trial Tr. PageID 236.) She was preparing to plead guilty to some of the charges, but had not yet done so. *Id.* She had met Cravens about three months before that. *Id.* at PageID 237. On the morning of October 7, 2007, she met Phillip Barnett while driving Cravens in his van. She had known Barnett all her life and in particular that he bought drugs from her previous boyfriend. *Id.* Barnett asked where he could get some drugs and she pointed to Cravens. Barnett got in the van with his friend whom Edwards did not know. As they were driving to take the woman to Taco Bell and then driving away from there, Cravens made a few phone calls. *Id.* at PageID 239. Edwards pulled the van into the back of the apartment complex where Cravens' father lives and picked up Henry. *Id.* Edwards corroborated the story that Bishop acted like he was going to vomit and got out of the van; Barnett said "leave him there." *Id.* After she turned near the Hartwell Kroger, someone said "Fuck" and then she heard a gunshot. *Id.* at PageID 240. She said "What happened?" and Barnett

-12-

responded "You know what happened." *Id.* Henry said "He tried to grab my gun." *Id.* They then went to a car wash and met up with Jasmine Tolbert. *Id.* Henry left with Jasmine and Cravens and Edwards went to Kentucky. *Id.* At the car wash, Cravens cleaned the inside of the van (of Barnett's blood) and Henry did the outside. *Id.* Edwards claimed she had no part in setting this crime up. *Id.* at 244. On cross-examination, she admitted that many of the details of what she testified to were somewhat different from details as testified to by Henry and Barnett.

## Analysis

Cravens points out various omissions from this testimony. There is, as he notes, no place where a witness testifies he told them how the robbery was going to happen or who was to be robbed or that he told Henry to bring his gun. (Traverse, Doc. No. 12, PageID 154) He claims Henry "volunteered" to come with him that day, but points to no evidence supporting this statement. *Id.* He admits that Henry testified Cravens told Henry a robbery was about to happen, but says "[j]ust because he tells someone that a robbery is about to happen does not make him complicit to the robbery." *Id.* However, he does not deny that he made the statement. He claims the record shows Henry working off of hints from Edwards. *Id.* He asserts that it was Edwards who assisted Henry in committing the robbery. *Id.* at PageID 155.

There was more than sufficient evidence submitted to the jury to allow them to find Cravens guilty beyond a reasonable doubt. All the witnesses who testified attempted to minimize their own criminal culpability. Barnett, who according to Edwards was looking for drugs, instead has a story about a chance meeting with Edwards and Cravens and a ride home. Although prepared to plead

-13-

to something in the case, Edwards does not admit any involvement in drug dealing, except referring Barnett to Cravens and admitting that her prior boyfriend was a drug dealer. Cravens himself did not testify and no other witness testified to any behavior by Cravens which would suggest he was an innocent bystander.

Cravens asserts he did not support, assist, encourage, cooperate with, advise, or incite Henry or share his criminal intent. However, there is no testimony denying it was Cravens' van or that Cravens contacted Henry and arranged for Edwards to pick him up. There is likewise no testimony contradicting that of Edwards and Henry that Cravens shared in the proceeds. There is no testimony contradicting Henry's claim that Cravens told him on the telephone that a robbery was going to happen. Cravens says that just because he "predicted" a robbery doesn't mean he was planning it, but how else could he have accurately predicted that there was going to be a robbery in his van in which Henry was to be the point man? There is no testimony contradicting Edwards' and Henry's testimony that Cravens participated in the clean up.

To the extent Cravens asks this Court to disbelieve Barnett's, Edwards', and Henry's testimony based on their responses on to cross-examination, we are not entitled to do so. They gave admissible testimony, self-incriminatory in both instances, and the jury was entitled to believe it. It is seldom the case that cross-examination is so powerful that it makes a witness' testimony incredible as a matter of law, and that certainly did not happen here. The Court of Appeals conclusion that there was sufficient evidence is not an objectively unreasonable application of *Jackson v. Virginia, supra.*

Because there was sufficient evidence to convict, Petitioner's Grounds One and Two are without merit and should be dismissed with prejudice. Because reasonable jurists would not

disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify that any appeal would not be taken in objective good faith and therefore should not be permitted to proceed *in forma pauperis*.

February 1, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).